UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CR 192 |
| | ) | |
| HANJUAN JIN, | ) | Judge Ruben Castillo |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On December 9, 2008, a Grand Jury returned a multiple-count, superseding indictment (the "Indictment") against Hanjuan Jin ("Defendant" or "Jin"). (R. 37, Superseding Indictment.) Presently before the Court is the Government's *ex parte, in camera* motion for the inspection of classified information and the issuance of a protective order pursuant to the Classified Information Procedures Act, 18 U.S.C. App. III, § 4 ("CIPA Section 4"), the Jencks Act, 18 U.S.C. § 3500(c) ("Section 3500(c)"), and Federal Rule of Criminal Procedure ("Rule") 16(d)(1). (R. 121, Govt. Mot.) For the reasons stated below, the motion is granted.[1]

## BACKGROUND

Jin was a software engineer for Company A, a Chicago-area company that sells telecommunications products and services around the world. (R. 37, Superseding Indictment at 1.) The Government alleges that while Jin was on medical leave from Company A in 2006, she negotiated and accepted employment with Company B, a telecommunications company based in

---

[1] The Court will also issue an *ex parte* order under seal containing the classified information that cannot be included in a public opinion. Because the Court is concerned by the lack of an adversarial presentation before the issuance of that order, the Court issues this opinion to explain the law it applied in reaching its decision. The Court also orders the Government to file a redacted version of its motion on the docket for the public record.

China that has provided telecommunications technology and products to the Chinese military. (*Id.* at 1-2.) The Government claims that Jin began working for Company B on developing telecommunications software while on leave from Company A. (*Id.*) During this time she was consulted by Company B representatives on projects in which Company B was working with the Chinese military. (*Id.* at 2.)

The Government alleges that after accepting employment with Company B, Jin returned to work at Company A on February 26, 2007, and did not advise anyone at Company A that she had accepted employment with Company B. (*Id.* at 2.) That day, she downloaded over 200 technical documents belonging to Company A on the secure internal computer network, and removed other documents and materials belonging to Company A. (*Id.* at 2-3.) The next day she informed her manger at Company A that she was resigning. (*Id.* at 3.) That same night, Jin downloaded additional technical documents belonging to Company A. (*Id.*)

The following day, February 28, 2007, Jin was stopped at O'Hare International Airport as she attempted to depart for China. (*Id.*) She had previously purchased a one-way ticket to China. (*Id.* at 2.) When she was stopped, Jin had in her possession over 1,000 technical electronic and paper documents belonging to Company A. (*Id.* at 3.) She also possessed Company B documents containing Chinese military applications for certain telephonic communications technology. (*Id.*)

A criminal complaint was filed against Jin on March 3, 2008. (R. 1, Compl.) On April 1, 2008, Jin was indicted by the Grand Jury. (R. 11, Indictment.) On December 9, 2008, the Grand Jury returned a superseding indictment. (R. 37, Superseding Indictment.) The Indictment charges Jin with violating the Economic Espionage Act of 1996 ("EEA"), 18 U.S.C. §§ 1831-

1839. Specifically, Counts I-III charge Jin with possessing trade secrets with intent to convert them to the economic benefit of someone other than the owner, intending and knowing that the offense would injure the owner, in violation of § 1832(a)(3). (*Id.* at 4-6.) Counts IV-VI charge Jin with possessing trade secrets, knowing the trade secrets were stolen, appropriated, obtained and converted without authorization, intending and knowing that the offense would benefit a foreign government, in violation of § 1831(a)(3). (*Id.* at 7-9.) In sum, the Indictment alleges that Jin stole trade secrets pertaining to telecommunications technology from Company A, and intended to convert those trade secrets to the benefit of a telecommunications competitor in China, Company B, and the Chinese military.

In the course of discovery, the Government discovered portions of certain classified documents arguably subject to disclosure under the Jencks Act and other federal rules. (R. 110, Govt. CIPA Mem. at 1.) To comply with its obligations and make these disclosures, the Government submitted an *ex parte* filing pursuant to CIPA under seal on April 13, 2011. (R. 121, Govt. Mot.) In its motion, the Government asks the Court to inspect the classified documents *in camera* and to issue a protective order pursuant to CIPA Section 4, Section 3500(c), and Rule 16(d)(1). (*Id.*)

The Government seeks a protective order pertaining to three specific categories of classified information. First, pursuant to Section 3500(c) and/or CIPA Section 4, the Government seeks to redact portions of written statements authored by two Federal Bureau of Investigation ("FBI") agents, who may testify at trial, that do not relate to the subject matter of their testimony (appended to the Government's motion in Binder 1). (*Id.*) Second, pursuant to CIPA Section 4 and/or Section 3500(c), the Government requests the redaction and non-

disclosure of certain documents authored by two testifying FBI agents that relate to the subject matter of the testimony but have no impeachment value because the information is repetitive of already-produced information (attached in Binder 2 to the Government's motion). (*Id.*) Finally, the Government seeks to delete from discovery one email pursuant to CIPA Section 4 and Rule 16(d)(1) because it is not relevant and helpful to the defense (attached in Binder 3 to the Government's motion). (*Id.*)

## ANALYSIS

Because of the *ex parte* nature of the Government's motion, Jin has not had the opportunity to review the legal basis upon which the Government bases its request or the information the Government seeks to prevent from disclosure. Although the Court understands the importance of the national security interests that underpin CIPA and the resulting need for *ex parte* proceedings, the Court also believes it has a duty to ensure that those interests do not unnecessarily inhibit the development and clarification of the law. Thus, while the Court cannot disclose the classified information that is the subject of this motion, Jin is at least entitled to an explanation of the governing law and the legal standards the Court employs in reaching its decision.

### I.     Governing law

The Government seeks a protective order pursuant to Section 3500(c) of the Jencks Act, Section 4 of CIPA, and Rule 16(d)(1) of the Federal Rules of Criminal Procedure. The Court will discuss each in turn before applying the relevant legal standards to the information in question in this case.

#### A.     Section 3500(c)

The first disclosure requirement at issue in the Government's motion for a protective order is the Jencks Act, 18 U.S.C. § 3500. As the Seventh Circuit has explained, "[t]o ensure the meaningful confrontation of government witnesses, the Act requires the government, upon the defendant's motion, to produce statements made by any of its witnesses which the particular witnesses signed, adopted, or approved, and which pertain to their testimony at trial." *United States v. Kimoto*, 588 F.3d 464, 475 (7th Cir. 2009) (internal quotation marks and citations omitted). "The hope is that these statements will afford the defense a basis for effective cross-examination of government witnesses and the possible impeachment of their testimony without overly burdening the government with a duty to disclose all of its investigative material." *Id.* (citations omitted).

Because the Act only requires the Government to turn over any statement made by a testifying witness "which relates to the subject matter as to which the witness has testified," 18 U.S.C. § 3500(b), Section 3500(c) provides procedures by which the Government can seek to exclude statements that do not pertain to the testimony of the witness:

> If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use.

18 U.S.C. § 3500(c). Here, the Government contends that it need not disclose certain portions of written statements authored by two FBI agents who may testify at trial because the potentially excised portions—found in Binder A and Binder B—do not relate to the subject matter of the testimony these agents may provide.

## B.  CIPA Section 4 and Rule 16(d)(1)

In seeking a protective order, the Government also relies upon CIPA Section 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure. CIPA governs the procedures for handling classified information in criminal proceedings. The fundamental purpose of CIPA is to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (quoting *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)). It is designed "to protect classified information from unnecessary disclosure at any stage of a criminal trial," *O'Hara*, 301 F.3d at 568, and "is essentially a procedural tool that requires a court to rule on the relevance of classified information before it may be introduced." *Dumeisi*, 424 F.3d at 578 (citing *United States v. Wilson*, 901 F.2d 378, 379 (4th Cir. 1990)). Under Section 4 of CIPA, which sets out procedures for "[d]iscovery of classified information by defendants":

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. III, § 4.

Section 4 does not create any new rights of or limits on discovery of classified information, but rather clarifies a court's existing powers under Rule 16(d)(1) to protect a government privilege in classified information. *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006) (citations omitted). Rule 16(d)(1) states, in part, that:

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte.

Fed. R. Crim. P. 16(d)(1). The Advisory Committee notes to Rule 16 make clear that "good cause" includes "the protection of information vital to the national security." Fed. R. Crim. P. Advisory Committee Notes to 1966 amendment.

Put differently, CIPA "does not confer on the government a privilege to refrain from disclosing classified information; it merely presupposes one." *United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010) (citations omitted). This privilege most likely has its origins in the common-law privilege against disclosure of state secrets, "which allows the government to withhold information from discovery when disclosure would be inimical to national security." *Id.* at 140-41(citation omitted). The state-secrets privilege, however, "must give way under some circumstances to a criminal defendant's right to present a meaningful defense." *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008). Thus, the task before a court in deciding whether a protective order is appropriate under CIPA is to determine when a defendant's right to present a defense displaces a validly asserted state-secrets privilege. *See Abu-Jihaad*, 630 F.3d at 141.

The Seventh Circuit has not explicitly addressed what standard a district court should apply in analyzing government requests for protective orders under CIPA Section 4. Accordingly, the Court will look to other appellate courts that have provided guidance in determining when classified information is properly withheld from a defendant under CIPA. The Government urges the Court to adopt the analysis formulated by the Court of Appeals for the District of Columbia in *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989). In *Yunis*, the D.C. Circuit applied the Supreme Court's reasoning in *United States v. Roviaro*, 353 U.S. 53

7

(1957), which set forth the test for the assertion of the informer's privilege by the government, to motions for protective orders under CIPA. *Id.*

In *Roviaro*, the Supreme Court held that the government may generally withhold from disclosure the identity of its informers or the contents of a communication which would endanger the secrecy of that information under the so-called informer's privilege. 353 U.S. at 59-60. Because preserving the anonymity of citizens who report crimes encourages such reports, the informer's privilege furthers and protects the public interest in effective law enforcement. *Id.* at 59. Despite this important purpose, however, the Supreme Court held that this privilege is not absolute; it must give way "[w]here disclosure of the informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60-61. The Supreme Court was clear, though, that due to the nature of the interests at stake, "no fixed rule with respect to disclosure is justifiable." *Id.* at 62. Instead, in determining whether an informer's identity should be disclosed when the disclosure is relevant and helpful to the defendant, a court must balance the public interest in nondisclosure against the defendant's right to prepare a defense, and the result depends on the "particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62.

Finding that "similarly sensitive considerations underlie the classified information privilege," the D.C. Circuit applied the *Roviaro* "relevant and helpful" rubric to develop a standard for district courts to apply in CIPA cases. *Yunis*, 867 F.2d at 623. Several other circuits have also adopted comparable standards in CIPA cases. *See Aref*, 533 F.3d at 79-80 (adopting "the *Roviaro* standard for determining when the Government's privilege must give way in a

CIPA case"); *United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004) (holding that "a defendant becomes entitled to disclosure of classified information upon a showing that the information 'is relevant and helpful to the defense . . . or is essential to a fair determination of a cause'"); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (holding that, "[i]n order to determine whether the government must disclose classified information, the court must determine whether the information is 'relevant and helpful to the defense'"); *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990) (stating that, in CIPA cases, "the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense"); *United States v. Smith*, 780 F.2d 1102, 1107-10 (4th Cir. 1985) (applying the *Roviaro* test to the assertion of privilege in a CIPA case); *United States v. Pringle*, 751 F.2d 419, 427-28 (1st Cir. 1984) (applying *Roviaro* in a CIPA case).

In applying the *Roviaro* test to the determination of when the Government's assertion of privilege must give way to the defendant's right to present a defense, courts consider three primary factors. First, courts consider whether the information is relevant, *Yunis*, 867 F.2d at 623, or otherwise discoverable, *Aref*, 533 F.3d at 80. This is a "low hurdle." *Yunis*, 867 F.2d at 623.

Second, courts determine whether the information is "helpful" to the defense of the accused, that is, that there is more than "a mere showing of theoretical relevance." *Id.* (citations omitted). Information is helpful to the defense if it is "useful to counter the government's case or to bolster a defense," but it "need not rise to the level that would trigger the government's obligation under *Brady v. Maryland* . . . to disclose exculpatory information." *Aref*, 533 F.3d at 80 (internal quotation marks and citations omitted).

9

In addition to looking at the *Roviaro* "relevant and helpful" rubric in analyzing motions under CIPA Section 4, courts also consider a third factor: the validity of the Government's assertion of privilege. The D.C. Circuit merely requires that the assertion of privilege "is at least a colorable one." *Yunis*, 867 F.2d at 623. The Second Circuit has a two-part test to determine if the state-secrets privilege applies, and requires that: "(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privileged is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Aref*, 533 F.3d at 80 (internal quotation marks and citation omitted).

Several circuits have also recognized or endorsed a final step in determining whether classified information must be disclosed to a defendant: the balancing of the Government's interest in nondisclosure against the defendant's need for the information. *See Smith*, 780 F.2d at 1105 (stating that the *Roviaro* standard that "calls for balancing the public interest in protecting the information against the individual's right to prepare his defense" should have been applied by the district court in a CIPA case); *United States v. Sarkissian*, 841 F.2d 959, 969 (9th Cir. 1988) (recognizing that the court can engage in the balancing of national security concerns against the defendant's need for documents); *Yunis*, 867 F.2d at 625 (acknowledging the balancing test, without adopting or rejecting it because the classified information in dispute was not "genuinely helpful to [the] defense"). This balancing test finds its source in *Roviaro*, in which the Supreme Court rejected "a fixed rule" mandating disclosure of an informer's identity when the disclosure would be "relevant and helpful" to the defense. 353 U.S. at 62. Instead, the Court required the

balancing of the competing public interest in maintaining the confidentiality of an informer's identity with the defendant's right to prepare a defense before requiring disclosure. *Id.*

Based on a review of the standards applied in these CIPA cases, the Court will apply the following four-part analysis in determining whether to grant the Government's motion for a protective order under CIPA Section 4. First, the Court will consider the assertion of privilege by the Government and determine if the information in question is classified. Second, the Court will determine whether the information is relevant or otherwise discoverable. Third, if the information is relevant and the assertion of privilege by the Government is valid, then the Court will consider whether the information is helpful to the defense. Finally, if these three standards are met, the Court will balance the Government's need to keep the classified information secret against the Defendant's interest in disclosure.

Importantly, because of the *ex parte* nature of this motion, the Court will err on the side of protecting the interests of the Defendant in applying these standards. *See United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998). The Court recognizes, as the D.C. Circuit has repeatedly, that the Defendant and her counsel, "who are in the best position to know whether information would be helpful to [her] defense, are disadvantaged by not being permitted to see the information—and thus to assist the court in its assessment." *Mejia*, 448 F.3d at 458. For that reason, the D.C. Circuit has applied "the 'at least helpful' test in a fashion that gives the defendants the benefit of the doubt." *Id.* The Court will do the same and give Jin the benefit of the doubt in its analysis. With these principles in mind, the Court now turns to the specific evidence the Government seeks to protect from disclosure.

**II.    Discussion**

As an initial matter, the Court concludes that the government has adequately asserted the state secrets privilege here and that the materials that are the subject of the protective orders are classified as defined by CIPA. *See* 18 U.S.C. App. III, § 1(b).[2] This conclusion is based upon a review of the information at issue as well as the sworn affidavit of C. Frank Figliuzzi, Assistant Director of the Counterintelligence Division of the FBI, which describes the reason for the classification of the information and the harm to national security that could result from disclosure. The Court now turns to determining if the classified materials in Binders 1, 2, and 3 are properly withheld from Jin under Section 3500(c) or the remaining CIPA Section 4 factors discussed above.

### A. Binder 1

Binder 1 contains electronic communications generated by FBI agents Michael Diekmann ("Agent Diekmann") and Elizabeth Stan ("Agent Stan"), who may testify at trial. During their investigations of Jin, Agents Diekmann and Stan authored electronic communications in which they referenced information obtained during the interviews of Jin. The Government states that when possible, it has declassified the electronic communications and turned them over to defense counsel in their entirety. Some electronic communications—those at issue here—contain information related to the interviews of Jin, and also unrelated material that the Government obtained through other means and contends cannot be disclosed. The Government accordingly seeks to redact the unrelated material in the electronic communications under Section 3500(c) and CIPA Section 4.

---

[2] CIPA defines "classified information" as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. III, § 1(b).

After reviewing the documents in question, the Court agrees with the Government that the statements in question do not overlap with the subject matter of the testimony of the agents as anticipated by the Government and need not be disclosed. *See United States v. Pittman*, 82 F.3d 152, 156 (7th Cir. 1996) ("[I]f there is no overlap between the statement and the testimony, the statement cannot be used to impeach the testimony and so disclosure of the statement is not required."). According to the Government, Agent Diekmann and Agent Stan will only testify about the interviews they conducted of Jin in March 2007. The material the Government seeks to redact is not the information gained during the interviews of Jin conducted by Agents Diekmann and Agent Stan, but rather information obtained through other means. Thus, the Court approves the proposed redactions of the electronic communications in Binder 1 under Section 3500(c). The Court, however, will revisit this issue if the testimony of the agents varies from the subject matter anticipated by the Government. The Court also finds that a protective order deleting the classified information in Binder 1 is proper under CIPA Section 4 because the information is not helpful to the defense.

**B. Binder 2**

Binder 2 also contains documents authored by two testifying agents. Unlike with Binder 1, the Government seeks the redaction or non-disclosure and deletion of documents in Binder 2 that include matters related to the agents' anticipated testimony. The Government contends that this redaction or non-disclosure and deletion is appropriate under Section 3500(c) because the information sought to be protected that relates to the agents' anticipated testimony is repetitive of information previously provided to defense counsel and the unredacted portions of the documents in Binder 1,

and thus has no impeachment value. Alternatively, the Government claims that the materials in Binder 2 should not be disclosed under CIPA Section 4.

The Court has carefully reviewed the documents in Binder 2, as well as other discovery materials already provided to defense counsel, and finds that the portions identified by the Government as potentially relevant to the agents' testimony are repetitive of information provided in other discovery. The proposed redacted or deleted sections and documents are thus properly withheld under Section 3500(c) because they do not have impeachment value. *See Pittman*, 82 F.3d at 156 (holding that disclosure of 23 pages of an agent's report did not have to be disclosed under Section 3500 because they "were a summary of the evidence disclosed to the defendants"). Additionally, because it is redundant of evidence already disclosed (or that will be disclosed) to the Defendant, even if the information in Binder 2 were discoverable, it would not need to be disclosed because it is not helpful and is properly withheld under CIPA Section 4.

### C. Binder 3

Binder 3 contains one email that the Government contends should be deleted from discovery pursuant to CIPA Section 4. After reviewing the email, the Court agrees. While the email might pass the low threshold of relevance, the Government does not believe it would be helpful to the defense. Moreover, even it were minimally helpful to the defense, the national security interests implicated in the disclosure far outweigh the nominal support the email would provide to the defense. The email in Binder 3 is therefore properly excluded from discovery under CIPA Section 4.

## CONCLUSION

For the foregoing reasons, the Court grants the Government's motion for the issuance of a protective order (R. 121).[3] The parameters of the protective order will be detailed in an order filed *ex parte* and under seal.

This delayed case can now proceed to trial. A priority trial date will be set at the next status hearing on June 22, 2011.

Entered:

Judge Ruben Castillo
United States District Court

Dated: June 14, 2011

---

[3] In accordance with CIPA and Rule 16, the text of the classified information at issue in this motion will be sealed and preserved to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. III, § 4; Fed. R. Crim. P. 16(d)(1).