IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 CR 192 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| HANJUAN JIN, | ) | |
| Defendant. | ) | |

**NOTICE OF FILING**

TO: Steven J. Dollear
Sharon R. Fairley
Christopher J. Stetler
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

Please take notice that on this 14th day of October, 2011, the undersigned filed the following document(s) in the above-captioned cause, a copy of which is attached hereto.

- **HANJUAN JIN'S RESPONSE TO GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE* SEEKING PRE-TRIAL RULINGS ON THE ADMISSION AND EXCLUSION OF CERTAIN EVIDENCE (DOCKET #144-1)**

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Carol A. Brook
Executive Director

By: *s/ Daniel P. McLaughlin*
Daniel P. McLaughlin
Attorney for Defendant

DANIEL P. McLAUGHLIN
Federal Defender Program
55 E. Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8300

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 192 |
| v. | ) | |
| | ) | Hon. Ruben Castillo |
| HANJUAN JIN | ) | |

**HANJUAN JIN'S RESPONSE TO GOVERNMENT'S CONSOLIDATED
MOTIONS *IN LIMINE* SEEKING PRE-TRIAL RULINGS ON THE
ADMISSION AND EXCLUSION OF CERTAIN EVIDENCE (DOCKET #144-1)**

Defendant, HANJUAN JIN, by the Federal Defender Program and its attorneys, JOHN F. MURPHY, BETH W. GAUS, and DANIEL P. McLAUGHLIN, submits the following response to the government's consolidated motions *in limine* seeking: (1) the admission of evidence regarding a wire transfer from an account held jointly by Ms. Jin and her husband (Section III of government's motion); (2) the admission Ms. Jin's statements to agents of Customs and Border Protection (Section IV of government's motion); (3) the admission of purportedly matching diagrams from Motorola and Sun Kaisens (Section V of the government's motion); and, (4) the exclusion of evidence regarding Motorola's security measures (Section VI of the government's motion). Dckt. #144-1. In support of her responses opposing the government's motion, Ms. Jin further states:

**I.     The Court should bar evidence regarding the wire transfer.**

The government seeks permission to submit evidence to the jury of a wire transfer of $115,000 from the joint money market account of Ms. Jin and her husband, Jige Chen, to a bank in China. The government speciously suggests that this transfer, coming five days after she was initially stopped at O'Hare Airport, suggests an intention to flee and, therefore, a consciousness

of guilt concerning the crimes with which she is charged. For the reasons explained below, the wire transfer has nothing to do with this prosecution, and provides no insight into the crimes charged. Consequently, the government's request should be rejected.

In making its argument, the government omits certain salient facts that bear directly on the purported "flight" analysis in this case. First, the government urges the Court to view the transfer in the context of Ms. Jin's efforts to travel to China on February 28 and March 1, 2007. The government maintains that this was an effort to flee the U.S. Yet, as the government well knows, Ms. Jin's husband and mother lived in China, and Ms. Jin traveled to China on several occasions in recent years, always to return to the U.S. Thus, traveling to China was not a unique occurrence that indicated flight from prosecution.

Most importantly, though, the government argues that Jin's efforts to flee from prosecution began after her initial stop by CBP officers on February 28, 2007 "when she attempted to leave the United States for China the very next day after CBP agents" initially stopped her. Dckt. #144-1 at 8. The government fails to disclose that the CBP officers, at the end of their interview on February 28, provided Ms. Jin with her passport and a ticket for travel on March 1 to cover her missed flight. The CBP officers, then, explicitly authorized– indeed encouraged– Ms. Jin to travel the following day. In these circumstances, nothing in her actions can be construed as an effort to flee.

Further, the account from which the wire transfer emanated was held not only by Ms. Jin, but also by her husband, Jige Chen. The government possesses no evidence concerning who actually made the transfer. Mr. Chen was just as likely to have made it. Without that essential evidentiary link, any suggestion regarding the origin or motive of the transfer would be highly

2

speculative. If the government cannot say with certainty– as it cannot– that Ms. Jin made that transfer, then the jury cannot draw the necessary inferences for the purposes the government offers it.

While citing an accurate statement of the standard for admissibility of flight evidence, the government clearly fails to establish any of the necessary inferences for admission. The probative value of flight evidence depends "upon the degree of confidence" the Court has in drawing the four necessary inferences:

   (1)   from the defendant's behavior to flight;

   (2)   from flight to consciousness of guilt;

   (3)   from consciousness of guilt to consciousness of guilt concerning the crime charged; **and**

   (4)   from consciousness of guilt of the crime charged to actual guilt of the crime charged.

*See, United States v. Solomon*, 688 F.2d 1171, 1176 (7th Cir. 1982).

On all four points the government's argument fails. Most significantly, the government's argument fails on the first point. The defendant's behavior, of course, refers to the wire transfer– the jumping-off point for the inferences. At the time of the transfer, Ms. Jin was at home in the Chicago area. The government possessed her passport, having taken it from her after the stop on March 1. She could not leave, nor was she making an effort to leave. She was not hiding from the authorities. Her behavior with the authorities could only be described as cooperative. Indeed, on March 9, 2007, four days after the wire transfer, Ms. Jin and her husband wrote an officer of CBP to make a formal request for the return of her seized funds. The letter contained her return address.

It is difficult to have any degree of confidence in evidence of flight of this nature: no proof as to who made the wire transfer, no effort to leave after the government formally (by confiscating her passport) notified her she could not leave, cooperation with the authorities, and direct communication with the government following the transfer. All the evidence supports the reality that Ms. Jin was not fleeing, and the wire transfer fails to alter that equation.

The government cites no cases to support the admissibility of a wire transfer of money or any other currency transaction alone as an inference of flight. The cases cited by the government concern individuals who personally fled or attempted to flee from prosecution. *See United States v. Solomon,* 688 F. 2d 1171(7th Cir. 1982)(defendant abandoned family, fled jurisdiction and changed identity two days after meeting with IRS agent investigating him for tax fraud); *United States v. Jackson*, 572 F. 2d 636 (7th Cir. 1978)(defendant, in drug distribution case, attempted to run out back door of apartment as police attempted to serve him with an arrest warrant); *United States v. Skoczen*, 405 F.3d 537 (7th Cir. 2005)(defendant, following release on bond in prosecution for theft of interstate property, absconded to Florida where he lived under an assumed name); *United States v. Levine*, 5 F.3d 1100 (7th Cir. 1993)(defendant in conspiracy to commit a murder for hire fled his home shortly after providing handwriting exemplars to investigating agents and moved to San Diego, living under an assumed identity).

Clearly, none of this authority comes remotely close to the factual situation presented to this Court. Ms. Jin was not fleeing. The wire transfer cannot alter that reality. It cannot create an inference of flight, let alone meet the other three prongs of the analysis, including consciousness of guilt of the crimes charged. Moreover, the government makes no suggestion that the money that was the subject of the wire transfer had anything to do with these charges.

Evidence relating to the wire transfer is irrelevant. Its admission would unfairly prejudice Ms. Jin. It would force her to defend actions in which there was no evidence of her involvement concerning a monetary transaction that was lawful on its face and money that was indisputably unrelated to the charged conduct. Admission of this evidence would implicitly urge the jury to speculate improperly on Ms. Jin's motives and confuse it with extraneous matters. This Court should reject the government's request.

## II. Ms. Jin's statements to CBP agents are irrelevant and, therefore, inadmissible.

Ms. Jin has filed a motion *in limine* seeking to bar the government from eliciting evidence regarding the currency seized at O'Hare Airport on February 27, 2007, and any statements made by Ms. Jin related to that seizure. Dckt. #149. This response will not rehash those arguments. Rather, it will focus on the weakness of the government's position in its motion.

When all the facts are considered, the irrelevance of these statements becomes evident. As an initial matter, the government mischaracterizes Ms. Jin's statements to the CBP officers as misstatements or lies. Indeed, the government omitted facts that reflect that Ms. Jin was truthful regarding the money she knew was in her possession. When asked by the CBP agents if she was carrying currency, Ms. Jin truthfully acknowledged that she was. When informed by the CBP agents regarding the currency reporting requirements, Ms. Jin truthfully acknowledged needing to complete the form. When completing the form, Ms. Jin reported carrying $11,000.00 in currency, a figure consistent with the money contained in her laptop bag as well as her wallet. In searching a separate carry-on bag, the government found an additional four envelopes containing $5,000.00 apiece.

5

The government not surprisingly emphasizes this as some sort of sinister conduct and blithely discounts Ms. Jin's statement that she was unaware of the money in her carry-on bag. Yet, pursuant to its own investigation, the government knows that Ms. Jin's husband, Jige Chen, only a day after the search, informed agents that it was he who placed the $20,000 in the carry-on bag, and that he had failed to inform Ms. Jin of his actions. As Mr. Chen informed the agents, he decided to provide extra cash to Ms. Jin in order for Ms. Jin to financially help her ailing mother. Mr. Chen neglected to tell Ms. Jin before she left, but assumed Ms. Jin would find the money. He would explain why he placed it in the bag once she contacted him from China.

Ms. Jin, in other words, fully cooperated with the agents, truthfully answered their questions, and complied with their requests. The government's investigation bore out her assertions to the CBP agents. Moreover, the money in question indisputably had *no relation whatsoever* to the documents found in her bags, to Sun Kaisens, to Motorola, or to the Chinese government. The money, and Ms. Jin's answer to questions regarding it, amount to the evidentiary equivalent of the null set.

Yet, the government, in spite of this, claims that Ms. Jin's statements to the CBP agents "are relevant to show JIN possessed the trade secret documents she was carrying without authorization and with the intent to benefit someone other than the owner of the trade secrets." Dckt. #144-1 at 11. In essence, the government maintains that Ms. Jin failed to disclose all the money to avoid a further search of her bags so that the documents she was carrying would not be discovered. The desire to avoid the search, the government continues, suggests she knew she was carrying trade secrets for the benefit of another.

6

The government's theory, however, promotes inferences far too attenuated to be considered relevant. In essence, the government's position can best be summarized as follows:

- Ms. Jin carried money in her bags;
- Ms. Jin declared that she was carrying money in excess of $10,000.00
- Ms. Jin failed to account for an additional $20,000.00 contained in her bag;
- That money was stored in a bag with Motorola documents;
- The Motorola documents were not properly in her possession;
- Ms. Jin was seeking employment with a Chinese company, Sun Kaisens;
- Sun Kaisens might have an interest in the documents;
- Ms. Jin might have an interest in providing the documents to Sun Kaisens;

With every evidentiary step the government must take to establish its point, the statements to CBP become more and more attenuated. Never mind the absence of evidence with respect to most of these points. The government, for instance, has no evidence that Ms. Jin and representatives of Sun Kaisens ever discussed anything related to Motorola or the substance of the documents. The government has no evidence that Ms. Jin, if she even ended up working for Sun Kaisens, would work on anything related to the material in her possession. Thus, the pure attenuation of the statements from the point the government wishes to prove as well as the absence of evidence to support the intervening evidentiary steps make Ms. Jin's statements wholly irrelevant. FRE 401.

Moreover, admission of these statements would unduly prejudice Ms. Jin's ability to get a fair trial in contravention of FRE 403. Admission of the statements and currency will require Ms. Jin to defend statements which were not false regarding money utterly unrelated to the charged

7

conduct and which was appropriately in her possession. Their admission will distract the jury from the charged conduct and significantly confuse the already complex issues that the jury must contend with. As such, this Court should reject the government's entreaties with regard to the statements to CBP.

### III. Ms. Jin's statements to CBP are inadmissible under any FRE 404(b) analysis.

The government unconvincingly urges the Court in the alternative to admit Ms. Jin's statement's under FRE 404(b) as a prior act that establishes Ms. Jin's "knowledge of and intent to commit the charged offenses–her successful possession of the trade secret documents for transportation to China where they could be used to the [sic] her benefit, the benefit of her proposed new employer Sun Kaisens, and the PRC." Dckt. #144-1 at 14.

Unpacking this loaded and unfounded assertion demonstrates that the government's position should be rejected. The government essentially premises the admissibility of the documents on the validity of other facts that, on their own, are highly dubious.

As demonstrated in the prior section, the government's reading of this evidence requires a veritable daisy chain of causation. Ms. Jin's statements to CBP at issue here do not establish that she was going to work at Sun Kaisens. They do not establish that Ms. Jin would in any way provide Sun Kaisens with the documents (a fact of which the government has no evidence). They do not establish that Sun Kaisens was interested in the documents. How the statements can then prove Ms. Jin's knowledge or intent to commit the charged offense remains unclear. In fact, the statements do not prove what the government maintains and should, therefore, not be admitted.

Moreover, as discussed in Ms. Jin's previously filed motion *in limine*, admissibility of the currency itself or her statements regarding it would unfairly prejudice Ms. Jin at trial. Dckt.

8

#149. The jury would hear about large amounts of undeclared cash in her possession, and be drawn to the inappropriate though potentially ineluctable conclusion that it was related to illegal activity. This unfair prejudice, together with the facts that Ms. Jin is not charged with a customs violation, that any theoretical currency violation is entirely dissimilar to the charged conduct, that no evidence exists that the money was in any way related to Sun Kaisens, the PRC or Motorola, and, in fact, that the evidence establishes that the money was Ms. Jin's and her husband's lawful possession, makes the inadmissibility of the documents incontrovertible. This Court should reject the government's request to admit the statements.

    **IV.    The "matching diagrams" should not be admitted because the diagrams are irrelevant, and do not meet the test of admissibility for Rule 404(b) evidence.**

In its motion to admit evidence of purported matching Motorola and Sun Kaisens diagrams, the government seeks to admit two pieces of larger documents. The first piece is from a Motorola document dated June 22, 2004, and pictures a diagram and descriptions of what appear to be components of a larger product. The other piece appears to depict the same diagram and its related descriptions, absent references to Motorola, and appears in two documents purportedly from Sun Kaisens. The larger documents, which contain these diagrams, were found among the thousands of pages of documents that Ms. Jin had in her possession in electronic or hard copy format when she was stopped at O'Hare on February 28, 2007.[1] The government

---

[1] The government did not publicly file the diagrams, or specify the larger documents in which they were found. The government pointed the defense to where the diagrams can be found in the voluminous discovery in this case. In compliance with the protective order, the defense has not publicly filed the diagrams either, nor included specific references herein, but would be happy to forward copies of the diagrams to your Honor's chambers and/or identify the larger documents in which they were found, if that would be helpful in ruling on the motion.

seeks to admit these diagrams on the basis that they are "probative of Jin's knowledge of and intent to benefit herself, Sun Kaisens, and the Chinese government."  (R. 144-1, page 21 of 28.)

The government does not include in its motion what kind of general technology the diagrams depict.  Doing so highlights the irrelevance of these purported matching diagrams.  The defense's already-disclosed telecommunications expert would testify, if these diagrams are admitted, that they relate, in laymen's terms, to technology that allows for the texting of photos or video clips.

Contrast that to the general technology involved in the three Motorola documents that Ms. Jin is actually charged with stealing.  As provided in both the government's and the defense's expert disclosures, these three documents involve parts of one of Motorola's cell phone systems.  The three charged documents have nothing to do with the specific technology for texting media.

It cannot be disputed that the diagrams that the government seeks to admit are wholly different from and unrelated to the three documents that Ms. Jin is actually charged with stealing.  It is not as if all telecommunications technology can be lumped into the same conceptual basket.  By extension, the admission of these diagrams would in no way shed light on whether Sun Kaisens or the Chinese military were interested in the three charged documents.

Contrary to the government's claims, the diagrams do not even go to show that Sun Kaisens "had used and benefitted from [Motorola] information on at least one occasion in the past."  Dckt. #144-1 at 21.  This is because it is not clear from the diagrams whether Motorola or Sun Kaisens or some other entity altogether produced the "original."  In other words, there is no proof that either entity actually created the original technology.

The government also claims that the diagrams show that Ms. Jin knew and intended that taking the three charged documents would benefit Sun Kaisens and the Chinese military, and injure Motorola. Dckt.# 144-1 at 21. Similar to its motion to admit certain Chinese documents that Ms. Jin had in her possession (Dckt. #155-1), however, the government has not and cannot cite to any evidence that Ms. Jin ***actually looked at or even knew about*** these two diagrams, particularly given the thousands of pages of technical documents in her possession. These diagrams truly are the needles in the haystack, and there is no evidence that Ms. Jin knew that these needles existed, let alone found and read them.

Additionally, it is not clear how the government would establish at trial the claimed relevance of these diagrams. The government did not proffer any expert testimony in its expert disclosures discussing these diagrams or the technology depicted in them. And, government agents, who are lay witnesses on this topic, would not be qualified to discuss the technology, a discussion of which would be necessary to make the connections that the government asserts.

In summary, the diagrams do not go to show what the government maintains and should, therefore, not be admitted on that basis.

* * * * *

The government urges in the alternative to admit the diagrams pursuant to FRE 404(b) as evidence of a prior crime, wrong, or act that establishes something other than propensity. Evidence of prior crimes, wrongs, or acts may be admitted ***only when*** all four of these prongs are met: "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is

11

sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice." *See United States v. Jones*, 455 F.3d 800, 806-07 (7th Cir. 2006).

The government cannot meet this test. As an initial matter, regarding the third prong, there is absolutely no evidence to support a finding that Ms. Jin committed the similar act – there is no evidence that Ms. Jin was in any way involved with Sun Kaisens either obtaining or creating the information depicted in the diagrams. Moreover, there is no proof that this is even a prior instance of wrong-doing by anyone, for that matter. It cannot be determined from the diagrams which entity had the information first, nor whether the other entity obtained the information through illegal or otherwise under-handed means. And regarding the other prongs, for all the reasons explained above, the diagrams do not go to establish any relevant matter in this case.

For the foregoing reasons, defendant Hanjuan Jin respectfully requests that this Court deny the government's request for the admission of the "matching diagrams."

**V.      The government's motion to exclude evidence regarding Motorola's security measures applies an overly narrow reading of the applicable law and improperly seeks the Court's ruling on a jury issue. It should be denied.**

The government has the burden of proving that each of the three charged documents meet the definition of "trade secret" that is provided by 18 U.S.C. § 1839. In order to do so, the government must demonstrate that Motorola "has taken reasonable measures to keep [the three charged documents] secret." § 1839(3)(A). The government's motion *in limine* impermissibly seeks to narrow Ms. Jin's ability to challenge the reasonableness of Motorola's security measures. The Court should not issue a pretrial ruling that limits Ms. Jin's defense on this key

issue, particularly since such a ruling would be made without the context provided by the testimony of witnesses.

To begin with, the government seeks to call an expert witness, Tom Chmielarski, to testify about Motorola's security measures and Ms. Jin's access to Motorola's computer network. According to the government's disclosure, Mr. Chmielarski will testify about the general framework by which Motorola employees access its networks, as well as the security measures in place, in addition to Ms. Jin's access to the network. The potential lines of inquiry on cross-examination are impossible to predict, but they properly include information related to Mr. Chmielarski's examination, which provides the factual background for his testimony.

In its motion, the government concludes that:

> the relevant inquiry is not about the effectiveness of the [security] measures, rather, the inquiry focuses on the nature and scope of the security measures that were in place at the time of the charged conduct.

Dckt.# 144-1 at 21-22. To be frank, the jury will almost certainly find the effectiveness of Motorola's security measures not only relevant, but material, to their ultimate conclusion on whether Motorola's measures were "reasonable." Any argument that the effectiveness of the security measures lacks relevance to the question of their ultimate reasonableness defies common sense. This is particularly true when the entity is a large corporation, such as Motorola. *See, e.g.*, *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 724 (7th Cir. 2003)("Illinois courts have recognized on several occasions that the expectations for ensuring secrecy are different for small companies than for large companies.")

The government is quite correct to point that it need not prove Motorola's security measures to be 100% effective to carry its burden, but the ultimate issue of what is reasonable, and whether Motorola's measures met that standard, is a question for the finder of fact. Evidence regarding the efficacy of Motorola's systems and policies– including evidence about infractions and failures of those systems– will not create a "mini-trial," as the government contends. On the contrary, such evidence will provide the jury with the necessary tools to determine whether Motorola took reasonable measures to keep its purported "trade secrets" secret, which is an element of the offense.

The government's motion should be denied. The Court has not been provided with sufficient information to rule on this issue in a vacuum. In addition, it would be improper to rule in the government's favor without having first heard Mr. Chmielarski's testimony about the same topics that are at the heart of this request.

**VI.     Conclusion.**

For the foregoing reasons, Ms. Jin respectfully requests that this Court deny the government's request for: (1) the admission of evidence regarding a wire transfer from an account held jointly by Ms. Jin and her husband (Section III of government's motion); (2) the admission Ms. Jin's statements to agents of Customs and Border Protection (Section IV of government's motion); (3) the admission of purportedly matching diagrams from Motorola and Sun Kaisens (Section V of the government's motion); and, (4) the exclusion of evidence regarding Motorola's security measures (Section VI of the government's motion).

                                            Respectfully submitted,

                                            Federal Defender Program
                                            CAROL A. BROOK
                                            Executive Director

                                   By: *s/John F. Murphy*
                                            JOHN F. MURPHY
                                            Counsel for Hanjuan Jin

                                            *s/Beth W. Gaus*
                                            BETH W. GAUS
                                            Counsel for Hanjuan Jin

                                            *s/Daniel P. McLaughlin*
                                            DANIEL P. McLAUGHLIN
                                            Counsel for Hanjuan Jin

FEDERAL DEFENDER PROGRAM
55 East Monroe Street
Suite 2800
Chicago, Illinois 60603
(312) 621-8300

## **CERTIFICATE OF SERVICE**

The undersigned, Daniel P. McLaughlin , an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**HANJUAN JIN'S RESPONSE TO GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE* SEEKING PRE-TRIAL RULINGS ON THE ADMISSION AND EXCLUSION OF CERTAIN EVIDENCE (DOCKET #144-1)**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on October 14, 2011, to counsel/parties that are non-ECF filers.

        FEDERAL DEFENDER PROGRAM
        Carol A. Brook
        Executive Director

        By: *s/ Daniel P. McLaughlin*
            Daniel P. McLaughlin

DANIEL P. McLAUGHLIN
Federal Defender Program
55 E. Monroe, Suite 2800
Chicago, Illinois 60603
(312) 621-8300