

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 CR 192 |
| | ) |
| HANJUAN JIN, | ) Judge Ruben Castillo |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Hanjuan Jin ("Defendant" or "Jin") is charged with stealing trade secrets in violation of the Economic Espionage Act, 18 U.S.C. § 1831 *et seq.* ("EEA"). (R. 37, Superseding Indictment.) Presently before the Court are the Government's consolidated motions *in limine* seeking a pre-trial ruling on the admission and exclusion of certain evidence, (R. 144-1, Govt. Mot.), and the Government's motion *in limine* seeking admission of certain documents found in Jin's possession, (R. 155, Govt. Mot. to Admit). The Court issued rulings largely resolving these motions on October 19, 2011. (R. 175, Min. Entry.) The admissibility of three sets of documents remain after the Court's prior rulings: (1) two documents from Company A and Sun Kaisens containing matching diagrams of certain telecommunications technology, (R. 144-1, Govt. Mot. at 15.); (2) documents 25 and 26 of the Government's motion to admit documents found in Jin's possession, (R. 155-1, Govt. Mot. to Admit at 11-14); and (3) emails to, from, or discussing Sun Kaisens that were challenged by Jin in response to the Government's motion to admit documents found in Jin's possession, (R. 168, Def.'s Resp. Mot. to Admit at 3, 9-10; R. 155-1, Govt. Mot. to Admit at 11-12). For the reasons stated below, the Government's consolidated motions *in limine* are granted in part and denied in part as they pertain to the

diagram documents, the Government's motion to admit certain documents found in the Defendant's possession is granted as it pertains to documents 25 and 26, and the Court will admit the Sun Kaisens emails.

## BACKGROUND

Jin is charged with violating provisions of the Economic Espionage Act, 18 U.S.C. § 1831 *et seq.* (R. 37, Superseding Indictment.) Specifically, the indictment charges Jin with three counts of possessing trade secrets—one count for each trade secret document—with intent to convert them to the economic benefit of someone other than the owner, intending and knowing that the offense would injure the owner, in violation of § 1832(a)(3). (*Id.* at 4-6.) The indictment also charges Jin with three counts of possessing trade secrets, knowing the trade secrets were stolen, appropriated, obtained, and converted without authorization, intending and knowing that the offense would benefit a foreign government, in violation of § 1831(a)(3). (*Id.* at 7-9.) In sum, Jin is charged with stealing three documents containing trade secrets pertaining to telecommunications technology from Company A, and intending to convert those trade secrets to the benefit of Sun Kaisens, a telecommunications competitor in China, and the Chinese military.

## LEGAL STANDARD

A motion *in limine* is a motion made "at the outset" or one made "preliminarily," Blacks Law Dictionary 803 (8th ed. 2004), that may be used to avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence at trial. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of

trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Because motions *in limine* are filed before a court has seen or heard the evidence at trial, rulings *in limine* are preliminary decisions that may be subject to alteration or reconsideration based upon the court's exposure to the evidence at trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989); *Charles v. Cotter*, 867 F. Supp. 648, 655 (N.D. Ill. 1994).

## ANALYSIS

### I. Company A and Sun Kaisens diagram documents

When Jin was stopped at O'Hare Airport on February 28, 2007, she had in her possession a large volume of documents—in electronic and hard copy format—from Company A and Sun Kaisens. The Government seeks to admit two of these documents: (1) a Company A document stored in Jin's external hard drive titled "[Company A] . . . Product Description Version 0.8f" that is dated June 22, 2004 and contains a product diagram (the "Company A diagram document"); and (2) a Sun Kaisens document with a diagram that "matches" the diagram in the Company A diagram document, absent the references to Company A (the "Sun Kaisens diagram document").[1] (R. 144-1, Govt. Mot. at 15.)

The Company A diagram document contains a detailed diagram of a Company A product on the top half, and a description of the components depicted in the diagram to the right of the diagram. Company A is mentioned twice in the description of the components. The Sun Kaisens diagram document contains an identical diagram, as well as a description of the components.

---

[1] Both documents, which have been filed under seal, actually exist in multiple forms. According to the Government, the Company A diagram document was saved several times on Jin's hard drive. (R. 144-1, Govt. Mot. at 15.) Two documents containing the Sun Kaisens diagram document were also found in Jin's possession in 2007. (*Id.* at 16.) For ease of reference, the Court will refer to the documents as if there were only one copy each.

3

There is no reference to Company A in the description of the components on the Sun Kaisens diagram document. There is, however, an abbreviation on the Sun Kaisens diagram document for one of the component parts that matches a component description in the diagram on the Company A diagram document, and does not match the component description on the Sun Kaisens diagram. The Government contends that this Company A abbreviation on the Sun Kaisens diagram document shows that Sun Kaisens stole this information from Company A and neglected to remove the reference to Company A. (R. 173, Govt. Reply at 6.)

The Government seeks to admit the diagram documents as direct evidence under Federal Rule of Evidence 401, or alternatively, under Rule 404(b). (R. 144-1, Govt. Mot. at 15-17.) Direct evidence of a crime "is almost always admissible against a defendant" and is primarily constrained by Rules 401 and 403. *See United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). The admission of "[e]vidence of *other* crimes, wrongs, or acts," on the other hand, is governed by Rule 404(b), which prohibits the use of prior bad acts for propensity purposes. Fed. R. Evid. 404(b) (emphasis added). Thus, as an initial matter, the Court must decide whether the diagram documents are direct evidence of guilt, or rather "other bad acts" evidence that falls under Rule 404(b). This inquiry is less than straightforward, however, because this area of the law has been muddled by the recently-abandoned "inextricably intertwined" doctrine, under which courts often admitted both direct evidence and evidence admissible under Rule 404(b). *See Gorman*, 613 F.3d at 718-19. Additionally, while "[t]here traditionally have been subtle distinctions between direct evidence of a charged crime, inextricable intertwinement evidence and Rule 404(b) evidence," the Seventh Circuit's "case law has not often focused on these fine distinctions" and has "often lumped together these types of evidence." *Id.* at 719 (citations

4

omitted). Nevertheless, the Court must decide which rules govern the admissibility of this evidence, and is guided by cases that have looked to the scope of the indictment itself to make this determination. *See United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("When evidence is embraced by the conspiracy in the indictment, the court need not resort to Rule 404(b) analysis."); *United States v. Azteca Supply Co.*, No. 10 CR 80, 2010 WL 4962828, at *3 (N.D. Ill. Dec. 1, 2010) (declining to undertake a Rule 404(b) analysis and admitting evidence of alleged acts of concealment by the defendants based on the government's representations that "every one of the proposed items of evidence relates directly to one of the paragraphs in the indictment defining the scheme to defraud").

Here, the Government has not pointed the Court to any part of the indictment that pertains to the diagram documents. This is probably because the three charged trade secret documents relate to Company A's iDEN technology, (R. 37, Superseding Indictment at 4-9), while the technology depicted in the diagram documents is unrelated to iDEN technology. Additionally, while the Government focuses on Jin's possession of the diagram documents at the same time as the charged trade secret documents in February of 2007, the Government really seeks to admit the diagram documents to show the "prior bad act" of Jin's and/or Sun Kaisens' theft of proprietary information from Company A, which predates the charged offense conduct in this case. *See United States v. Collins*, 604 F.3d 481, 488 (7th Cir. 2010) (noting evidence from the time frame of the charged conspiracy was not "prior bad acts" evidence and comparing that evidence with evidence in another case from a time period before the charged offense that was subject to Rule 404(b) analysis). Accordingly, based on the content and chronology set forth in

5

the indictment, the Court finds that the diagram documents are evidence of "prior bad acts" that must be subjected to a Rule 404(b) analysis rather than direct evidence of the charged crime.

Under Rule 404(b), "evidence of other acts is inadmissible 'to prove the character of a person in order to show action in conformity therewith' but may be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident." *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011) (citing Fed. R. Evid. 404(b)). Evidence may be admitted under Rule 404(b) only when four conditions are met:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Harris*, 587 F.3d 861, 864-65 (7th Cir. 2009) (citations omitted).

Before determining whether the diagram documents satisfy these conditions, the Court must clarify some preliminary issues. First, although the Government is not particularly clear in delineating the "other acts" the diagram documents are evidence of, the Court deduces two related possibilities. According to the Government, the diagram documents are evidence that: (1) Jin previously stole the proprietary information in the diagram documents from Company A and provided it to Sun Kaisens, which then used the information without authorization; and/or (2) Sun Kaisens obtained and used—without Jin's assistance—Company A's proprietary information in the diagram documents without authorization. (*See* R. 144-1, Govt. Mot. at 16-17.) This distinction is important because the latter possibility raises the issue of whether and how Rule 404(b) applies to "other act" evidence of non-defendant, third parties. Although there

is disagreement among appellate courts regarding this issue, *see Wynne v. Renico*, 606 F.3d 867, 873-74 (6th Cir. 2010) (Martin, J. concurring), the Seventh Circuit has clearly held that "Rule 404(b) does apply to third parties." *Agushi v. Duerr*, 196 F.3d 754, 760 (7th Cir. 1999). The Court will therefore consider the admissibility of the diagram documents as evidence of both possible "other acts" under Rule 404(b).

### A. Matter at issue other than propensity

The first element of the Rule 404(b) analysis ensures that a party seeking admission of the "prior bad acts" evidence does so for a proper purpose. Although Rule 404(b) prohibits evidence of prior bad acts "in order to show action in conformity therewith," such evidence is admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Here, the Government argues that the diagram documents are "probative of Jin's intent, knowledge, motive and absence of mistake related to the charged offenses. (R. 144-1, Govt. Mot. at 17.) Specifically, the Government maintains that the diagram documents show that Jin was aware on February 28, 2007, that Sun Kaisens had previously benefited from using Company A technology information, and thus that Jin intended or knew that taking Company A trade secrets would benefit Sun Kaisens and injure Company A. (*Id.* at 16.) The Government also argues that this evidence rebuts any claim of mistake by Jin, including that she possessed the Company A documents to refresh her memory and had no intent to harm Company A, as she told law enforcement. (*Id.* at 17.) The Court agrees that the purposes for which the Government seeks to admit the diagram documents is not for propensity purposes, and therefore the first element of the 404 (b) admissibility analysis is satisfied.

7

## B. Similarity and temporal proximity

Next, the Court must inquire into the similarity of the evidence of the prior bad act and its temporal proximity to the charged offense. "Questions about 'how similar is similar enough' . . . do not have uniform answers; these answers . . . *depend on the theory that makes the evidence admissible*, and much be reached on a case-by-case basis." *United States v. Foster*, 652 F.3d 776, 785 (7th Cir. 2011) (internal quotation marks and citations omitted). The comparison of the prior acts to the charged crimes "need not be unduly rigid, but rather should be directed at establishing the relevancy of the 404(b) evidence." *Id.* at 786 (internal quotation marks and citations omitted).

Given the purposes for which the diagram documents are offered, the Court finds that they meet the "similarity and temporal proximity" element of the 404(b) admissibility analysis because the diagram documents are relevant to Jin's intent. *See Hicks*, 635 F.3d at 1069 (stating that Rule 404(b) requires only that the charged crime and the other act be "similar enough and close enough in time to be relevant to the matter in issue"). The diagram documents involve the same entities involved in this case—Company A and Sun Kaisens—and pertain to telecommunications technology. Although these documents alone do not prove Jin possessed the charged trade secret documents with the requisite intent, they undeniably have some probative value, and as the drafters of the Federal Rules of Evidence noted in explaining the concept of relevance, "'[a] brick is not a wall.'" Fed. R. Evid. 401, 1972 Advisory Committee Comments (quoting McCormick on Evidence § 152). That Jin had in her possession documents indicating that she and/or Sun Kaisens may have stolen Company A technology in the past makes it more

likely that Jin knew that taking Company A documents would harm Company A and benefit Sun Kaisens in this case.[2]

Jin argues that the diagram documents have "nothing to do with" the technology involved in the three charged documents, and thus are irrelevant. (R. 164, Def.'s Resp. at 10.) The Government does not dispute that the technology in the diagram documents is not the same as in the three charged trade secret documents. (R. 173, Govt. Reply at 8.) The Government argues, though, that the diagram documents and the trade secret documents are both related to the business both Company A and Sun Kaisens are in—telecommunications technology. (*Id.*) The Court agrees that this level of specificity, combined with the fact that the diagram documents pertain to the same entities in this case, is sufficient for the diagram documents to be relevant here and to meet the "similarity" requirement at issue in the second element of the 404(b) admissibility analysis. Jin is free to argue to the trier of fact that the probative value of the diagram documents is minimal given the different technology at issue in this case, but this difference does not preclude the evidence under 404(b).

Jin also points out several weaknesses in this evidence, but these weaknesses go the weight the jury should give the evidence, not its relevance to the purpose for which the Government seeks to admit the diagram documents. First, Jin emphasizes that the larger documents containing the diagram documents were found among the thousands of documents Jin possessed in electronic and hard copy formats when she was stopped on February 28, 2007, and that there is no proof that Jin "actually looked at or even knew about" the diagram documents. (R. 164, Def.'s Resp. at 9, 11.) That there were many documents in Jin's possession on February

---

[2] Jin does not argue that the prior acts were not close enough in time to be admissible under Rule 404(b).

9

28, 2007, however, does not change the fact that the diagram documents were in Jin's possession (and found in her home as well). Once again, Jin can argue at trial that she had thousands of documents in her possession and that she never looked at or knew about the diagram documents, but this argument is unpersuasive as it pertains to the second element of the Rule 404(b) analysis for admission of prior acts.

C.  **Sufficient evidence**

The third element of the Rule 404(b) analysis requires that the evidence be sufficient to prove that Jin and/or Sun Kaisens committed the prior acts by a preponderance of the evidence. *United States v. Reyes*, 542 F.3d 588, 592 (7th Cir. 2008). Jin contends that there is no proof to support a finding that Jin or Sun Kaisens committed any wrong-doing. (R. 164, Def.'s Resp. at 12.) The Court considers first whether there is sufficient evidence to support a finding that Sun Kaisens obtained and used the information in the diagram documents from Company A without authorization, and second, whether there is sufficient evidence to support that Jin was the one who stole the information and provided it to Sun Kaisens.

Regarding the first inquiry, whether Sun Kaisens stole the information from Company A, Jin contends that "[i]t cannot be determined from the diagrams which entity had the information first, nor whether the other entity obtained the information through illegal or otherwise underhanded means." (*Id.*) The Government counters that the Company A abbreviation on the Sun Kaisens diagram document shows that Sun Kaisens stole the information from Company A and neglected to remove the abbreviation. (R. 173, Govt. Reply at 6.)

The Court finds that the Government has the better of this argument. A review of the two diagram documents leads the Court to conclude that it is more likely than not that Sun Kaisens

10

obtained and used the information in the Sun Kaisens diagram documents from Company A without authorization. First, the diagrams are identical except for the references to Company A in the component descriptions on the Company A diagram document, which are not present on the Sun Kaisens document. If this were the only evidence before the Court, it would clearly be insufficient. What moves the evidence over the preponderance threshold, however, is the reference to Company A on the Sun Kaisens diagram. This indicates that it is more likely than not that Company A produced the Company A diagram document first, and that Sun Kaisens copied it and removed the references to Company A, with one minor but important oversight. Although Jin had an opportunity to respond after the Government highlighted the Company A abbreviation on the Sun Kaisens document, she has put forth no arguments or alternative explanations for the Company A abbreviation on the Sun Kaisens document. Additionally, while the Company A diagram document contains numerous markings indicating its confidential and proprietary nature and prohibiting its distribution without authorization, the Sun Kaisens diagram document does not have any such markings.[3] The Court accordingly finds that it is more likely than not that Sun Kaisens committed the "other bad act" at issue with regards to the diagram documents.

The Court is not convinced, however, that the Government has put forth sufficient evidence to support a finding that Jin stole the information in the diagram documents from Company A and provided it to Sun Kaisens. The main evidence put forth by the Government in support of Jin's involvement in the alleged theft of the information in the diagram documents is that Jin worked for Company A for nine years, which overlapped with the period in which she

---

[3] The Court assumes that the untranslated portions of the Sun Kaisens diagram document do not contain any information material to this determination.

11

met with representatives from Sun Kaisens and worked on Sun Kaisens' projects. (*Id.* at 7.) The Court does not find that this general and vague evidence meets the preponderance of the evidence standard. Company A is a large company with operations worldwide; there were many other ways for Sun Kaisens to obtain the information in the diagram documents. There is no evidence before the Court pertaining to the ability of Jin or other Company A employees to access the Company A diagram document. Absent more specific details linking Jin to the information in the diagram documents, the Court concludes that there is insufficient evidence that Jin stole the information in the diagram documents and that the diagram documents may not be admitted as evidence of this "prior bad act." As discussed above, however, there is sufficient evidence that Sun Kaisens obtained and used the information in the diagram documents without authorization from Company A, and thus the evidence of this "prior bad act" meets the third element of the 404(b) analysis.

### D. Probative value versus prejudice

Finally, the Court must consider the aspect of the Rule 404(b) analysis that overlaps with Rule 403—whether the prejudicial value of the evidence substantially outweighs its probative value. *Foster*, 652 F.3d at 786. "Central to this determination is whether, in context, the evidence's 'prejudicial impact is substantial in relation to the evidence's probative value.'" *Id.* (citation omitted). As the Court has found that the diagram documents may only be admitted as evidence of Sun Kaisens' prior theft of the diagram document information from Company A, and not as evidence of Jin's involvement in that theft, the Court will limit its analysis to that "prior bad act."

As discussed above, that Jin had the diagram documents in her possession is probative of

Jin's knowledge and intent with regards to the charged trade secrets. Although Jin rightly points out many weaknesses in this evidence, it is not insubstantial in rebutting any contention by Jin that she did not know that Sun Kaisens would benefit from the charged trade secrets or that Company A would be harmed. The diagram documents are also probative in rebutting Jin's claim that she only had the documents to refresh her memory.

Regarding the risk for unfair prejudice, the Court has some concerns that evidence of Sun Kaisens' prior bad act will be used for improper propensity purposes or imputed to Jin. These concerns, however, are common when evidence is admitted under Rule 404(b) and can be addressed by an appropriate limiting instruction at the time the evidence is admitted at trial and again during jury instructions.[4] *See United States v. Jones*, 455 F.3d 800, 809 (7th Cir. 2006) (noting that such instructions "are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence") (citation omitted). Jin's primary arguments regarding the risk for unfair prejudice pertain to the diagram documents as evidence that Jin was involved in Sun Kaisens' prior act of theft, (R. 188, Def.'s Supp. Resp. at 3-4), which the Court has already decided is not an admissible "prior bad act" under Rule 404(b) because there is insufficient evidence linking Jin to the prior theft. Accordingly, the Court concludes that the diagram documents—as evidence of Sun Kaisens' previous theft of the information in the diagram documents from Company A—are sufficiently probative regarding Jin's knowledge and intent to overcome any unfairly prejudicial effect of that evidence. In sum, the Court finds that the diagram documents can be admitted as evidence that Sun Kaisens obtained and used the information in the diagram documents without authorization from

---

[4] The Court requests that the Government and Jin propose an appropriate limiting instruction for this evidence.

Company A. The diagram documents are not admissible as evidence of Jin's involvement in the theft of the information in the diagram documents.

## II.     Documents 25 and 26

The Government also seeks admission of documents 25 and 26 of the Government's motion to admit certain documents found in Jin's possession on February 28, 2007. (R. 155-1, Govt. Mot. to Admit at 11-14.) Document 25 is an article discussing a variety of telecommunications systems in China, including iDEN, the technology that is the subject of the charged trade secret documents. Document 26 is a catalog of military technology products produced by Thales, a multinational company. The Government seeks to admit these documents as relevant to Jin's intent or state of mind at the time of the charged offenses. (*Id.*)

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Under Rule 402, all relevant evidence is generally admissible unless there is a reason for its exclusion. Fed. R. Evid. 402. The definition of "relevant" is expansive; "[t]o be relevant, evidence need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, but it must in some degree advance the inquiry." *Thompson v. City of Chi.*, 472 F.3d 444, 454-55 (7th Cir. 2006) (internal quotation marks and citations omitted).

Jin's primary argument against the admission of these documents is that they are irrelevant because the Government has not provided any evidence that "Jin *actually read* and therefore knew the contents of the voluminous documents in her possession." (R. 168, Def.'s Resp. Mot. to Admit at 4-5.) Like with the diagram documents discussed above, the Court finds

14

that this argument goes more to the weight the jury should give documents 25 and 26 than their admissibility. Jin's possession of these documents does not "prove conclusively the proposition for which it is offered," but all that is required to be relevant is that the evidence serve as "a single link in the chain of proof." McCormick on Evidence § 185. Jin's possession of these documents, combined with her statement that she was given the documents to read and review by a Sun Kaisens employee, could lead a juror to conclude that she read the documents, which would, in turn, be probative of her intent and knowledge at the time of the charged offenses. While Jin can argue at trial that she did not read documents 25 and 26, the Court will not exclude them as irrelevant.

Jin has an additional relevance objection pertaining to document 26, the Thales catalog. Specifically, Jin argues that the catalog is irrelevant because it is a general catalog of military technology available from Thales, a multinational company, that does not even mention China. (R. 168, Def.'s Resp. Mot. to Admit at 5.) The Government does not dispute the lack of reference to China in the catalog, but maintains that it is relevant because Jin stated that an employee of Sun Kaisens gave her the catalog, and this shows that Jin knew that Sun Kaisens was in the business of developing military technology. (R. 180, Govt. Supp. Reply at 3.) Given this connection between the catalog and Sun Kaisens, the Court finds that the catalog meets the low threshold of relevance. Accordingly, the Court will admit documents 25 and 26 as relevant to Jin's intent and knowledge at the time of the charged offenses.

### III. The Sun Kaisens emails

Finally, the Court must determine whether certain emails pertaining to Sun Kaisens are admissible. Although the Government did not request a pretrial ruling on their admissibility, the

15

emails were mentioned in the Government's motion seeking admission of the documents found in Jin's possession. (R. 155-1, Govt. Mot. to Admit at 10-11.) Although Jin concedes that emails she authored are admissible as admissions by a party-opponent under Rule 801(d)(2)(A), Jin objects to the admission of the emails sent to her as inadmissible hearsay because they do not fall under that exception. (R. 168, Def.'s Resp. Mot. to Admit at 9-10.) The Government points the Court to two emails or email chains that it may seek to admit at trial, and contends that they are not being offered for the truth of the matter asserted in the emails and are thus admissible.

The first email is a December 4, 2006 email from Sun Kaisens employee Gengshu Liu to Jin. (R. 180, Govt. Supp. Reply, Ex. A.) In the email, Liu states that the attachment to the email "is going to be discussed with Institute 61 and other units." (*Id.*) The Government contends that this email is admissible to show that Jin "was on notice that Sun Kaisens performed work for the 61st Institute, a unit of the Chinese military." (*Id.* at 3.) The Court agrees that this is a proper non-hearsay purpose that falls outside the parameters of Rule 801(c), and accordingly will admit the December 4, 2006 email. *See* McCormick on Evidence § 249 ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as receiving notice or having knowledge[.]")

Next, the Government seeks admission of an email string between Jin and "Chief Qi," who the Government contends was the General Manager of Sun Kaisens, from June 2006 to November 2006. (R. 180, Govt. Supp. Reply, Ex. B.) Jin already conceded that the emails she wrote are admissible as admissions of a party-opponent under Rule 801(d)(2)(A). The Government contends that the emails from Chief Qi are admissible for the non-hearsay purpose of providing context to Jin's response emails. (*Id.* at 4.) As statements offered to provide

16

context are not offered for their truth, the Court will admit the string of emails found in Exhibit B. *See United States v. Simmons*, 582 F.3d 730, 736 (7th Cir. 2009) (finding that out-of-court statements were properly admitted for "the jury to have that context as opposed to hearing only one half of conversations that were two-sided"); *United States v. Bermea-Boone*, 563 F.3d 621, 626 (7th Cir. 2009) (finding that the admission of the full transcripts of telephone conversations between the defendant and another party was appropriate and noting that "[i]t is well settled that statements that are offered for context, and not for the truth of the matter asserted, are not hearsay") (citations omitted).[5] As both emails are being offered for non-hearsay purposes, the Court finds that they are admissible at trial and will offer a limiting instruction pertaining to the proper purpose of the emails at trial.

## CONCLUSION

For the foregoing reasons, the Government's motion to admit the diagram documents (R. 144-1) is granted in part and denied in part. Specifically, the diagram documents are admissible pursuant to Rule 404(b) as evidence of Sun Kaisens' "prior bad acts." The documents are not admissible as evidence of Jin's "prior bad acts." The Government's motion to admit documents 25 and 26 (R. 155-1) is granted. Finally, the Court will admit the Sun Kaisens emails referenced in the Government's motion to admit the documents in Jin's possession (R. 155-1).

---

[5] The Government may also seek to admit an additional email sent from Jin to an individual on January 28, 2007. (R. 180, Govt. Supp. Reply, Ex. C.) As Jin has already conceded that emails she authored fall under Rule 801(d)(2)(A), the Court will not address the admissibility of this email.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated:** November 3, 2011